**Maurice KING, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Emerson KING, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 13091, 13092.**

United States Court of Appeals
Sixth Circuit.

Oct. 25, 1957.

Otto W. Hess and George A. Meekison, Napoleon, Ohio, George R. Hewes, Toledo, Ohio, for appellants.

Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio (Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.

PER CURIAM.

The defendant brothers, Maurice and Emerson King, have appealed from judgments of conviction and respective sentences of imprisonment for five years and three years for violation of several sections of the United States Code. The indictment upon which they were convicted charged the offenses of aiding and abetting a bank official in misapplying a bank's funds, in making false entries in the books of a member bank of the Federal Reserve System insured by the Federal Deposit Insurance Corporation and in devising a scheme to use the mails to defraud. Sections 2, 656, 1005 and 1341, Title 18 U.S.C.A.

The carefully considered and well-reasoned opinion of the district judge sets out in adequate detail the contents of each of the fourteen counts of the indictment.

Nelson Rychener, a clerk employed by Maurice King, and Chester H. Miller, Cashier of the Peoples State Bank in Archbold, Ohio, were jointly indicted with the appellant King brothers, who were engaged in the operation of a road-machinery business in the conduct of which they pursued their fraudulent transactions with the bank, with the active connivance of the bank's cashier, Miller. The complicated, fraudulent transactions were effectuated by the bank official in carrying checks of the King brothers as cash items instead of charging their account. Their account had insufficient funds to cover the checks.

After Miller had been guilty of making false entries on the bank books, he testified that he continued to carry the Kings' checks as cash items because they had him "over a barrel." He implored them to come to his aid and take him off the spot. He wrote a letter to appellant Maurice King in which he said: "One of these days the Examiners will be back in here and unless you guys get me off the spot it will be too bad for me. I never know when they are coming, therefore, I must keep my things in shape to pass their inspection. As it stands now it is certainly no good and I beg of you to get these things taken care of if you expect to stay in business."

Maurice King clearly demonstrated that he knew that Chester Miller was holding the King checks and issuing drafts when there were insufficient balances to meet the checks, for he stated in a letter to Miller: "I can surely realize that without doubt we have caused you many sleepless hours and aggravation."

There is no merit in the argument of appellants that the Peoples Bank was protected by the assignment to it of an irrevocable letter of credit in the sum of $324,500. The letter of credit was based on special conditions which were not complied with by the King brothers at the time they drew checks on the Peoples Bank—checks which were treated as drawn against sufficient funds when the Kings had insufficient money on deposit to cover them. The criminal intent of the appellants is abundantly revealed by the record. The district judge cited many relevant authorities from the federal courts, including Pharr v. United States, 6 Cir., 48 F.2d 767, in support of his decision.

At the conclusion of the six-day trial, the trial judge sustained the motion of Rychener for dismissal, for the reason that he was a mere clerk in the employ of Maurice King and an occasional machinery inspector for the Kings; and that, when he drew two certain checks upon which the charges against him were based, he drew the checks at the request and instigation of Maurice King, his employer. In passing sentence upon Ches-

ter Miller, the bank's cashier, Judge Kloeb stated: "He entered a plea of guilty to the Indictment and thereafter he cooperated with the officials, took the witness stand, and even though it was a difficult thing to do he laid bare everything that he had wrongfully done and enabled the Government to lay bare this case to the Court. I believe under all of these circumstances it would be wrong to further punish this young man. He has been punished sufficiently. He has probably lived through a thousand deaths and the Court doesn't want to further add to his misery. Therefore, sentence will be deferred in his case and he will be placed on probation for two years."

In sentencing the King brothers, the district judge said: "I have presided over a great many trials here in the course of 19 years, and it seems to me that the conduct of these defendants in making unauthorized use of the moneys of this bank without establishing any credit with the bank by way of drawing checks and making substantial overdrafts involving large sums with respect to these checks is inexcusable. It certainly can't be excused by saying, 'We did not keep our check balances.' That the Court has referred to in at least one of the cases that was reviewed in connection with one point of law. If they were oblivious to their bank balances, they wanted to be, and therefore they drew checks recklessly whenever they wanted to obtain sums up to $32,000 even though their balance at any given time may have been but $100. They drew these checks, well knowing that the cashier was sweating blood in an effort to take care of those checks and to conceal them from the bank officials and the bank examiners."

We think the trial judge was fully justified, from the evidence in the case, in making that statement.

The judgments of conviction and sentence are affirmed on the basis of the well-reasoned opinion of District Judge Kloeb and the authorities cited by him therein.